*609 Justice Ginsburg
delivered the opinion of the Court.
In 1994, Michigan voters approved a proposal amending the State Constitution to provide that “an appeal by an accused who pleads guilty or nolo contendere shall be by leave of the court.” Mich. Const., Art. 1, §20. Thereafter, “several Michigan state judges began to deny appointed appellate counsel to indigents” convicted by plea. Kowalski v. Tesmer, 543 U. S. 125, 127 (2004). Rejecting challenges based on the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the Federal Constitution, the Michigan Supreme Court upheld this practice, and its codification in Mich. Comp. Laws Ann. § 770.3a (West 2000). People v. Harris, 470 Mich. 882, 681 N. W. 2d 653 (2004); People v. Bulger, 462 Mich. 495, 511, 614 N. W. 2d 103, 110 (2000).
Petitioner Antonio Dwayne Halbert, convicted on his plea of nolo contendere, sought the appointment of counsel to assist him in applying for leave to appeal to the Michigan Court of Appeals. The state trial court and the Court of Appeals denied Halbert’s requests for appointed counsel, and the Michigan Supreme Court declined review.
Michigan Court of Appeals review of an application for leave to appeal, Halbert contends, ranks as a first-tier appellate proceeding requiring appointment of counsel under Douglas v. California, 372 U. S. 353 (1963). Michigan urges that appeal to the State Court of Appeals is discretionary and, for an appeal of that order, Ross v. Moffitt, 417 U. S. 600 (1974), holds counsel need not be appointed. Earlier this Term, in Kowalski v. Tesmer, this Court, for prudential reasons, declined to reach the classification question posed by Michigan’s system for appellate review following a plea of guilty, guilty but mentally ill, or nolo contendere. Today, *610 we reach the classification question and conclude that Hal-bert’s case is properly ranked with Douglas rather than Ross. Accordingly, we hold that the Due Process and Equal Protection Clauses require the appointment of counsel for defendants, convicted on their pleas, who seek access to first-tier review in the Michigan Court of Appeals.
I
The Federal Constitution imposes on the States no obligation to provide appellate review of criminal convictions. McKane v. Durston, 153 U. S. 684, 687 (1894). Having provided such an avenue, however, a State may not “bolt the door to equal justice” to indigent defendants. Griffin v. Illinois, 351 U. S. 12, 24 (1956) (Frankfurter, J., concurring in judgment); see id., at 23 (same) (“[W]hen a State deems it wise and just that convictions be susceptible to review by an appellate court, it cannot by force of its exactions draw a line which precludes convicted indigent persons... from securing such . . . review.”). Griffin held that, when a State conditions an appeal from a conviction on the provision of a trial transcript, the State must furnish free transcripts to indigent defendants who seek to appeal. Id., at 16-20 (plurality opinion). Douglas relied on Griffin’s reasoning to hold that, in first appeals as of right, States must appoint counsel to represent indigent defendants. 372 U. S., at 357. Ross held, however, that a State need not appoint counsel to aid a poor person in discretionary appeals to the State’s highest court, or in petitioning for review in this Court. 417 U. S., at 610-612, 615-618.
Cases on appeal barriers encountered by persons unable to pay their own way, we have observed, “cannot be resolved by resort to easy slogans or pigeonhole analysis.” M. L. B. v. S. L. J., 519 U. S. 102, 120 (1996) (internal quotation marks omitted). Our decisions in point reflect “both equal protection and due process concerns.” Ibid. “The equal protection concern relates to the legitimacy of fencing out would-be *611 appellants based solely on their inability to pay core costs,” while “[t]he due process concern homes in on the essential fairness of the state-ordered proceedings.” Ibid.; see also Evitts v. Lucey, 469 U. S. 387, 405 (1985).
Two considerations were key to our decision in Douglas that a State is required to appoint counsel for an indigent defendant’s first-tier appeal as of right. First, such an appeal entails an adjudication on the “merits.” 372 U. S., at 357. Second, first-tier review differs from subsequent appellate stages “at which the claims have once been presented by [appellate counsel] and passed upon by an appellate court.” Id., at 356. Under the California system at issue in Douglas, the first-tier appellate court independently examined the record to determine whether to appoint counsel. Id., at 355. When a defendant able to retain counsel pursued an appeal, the Douglas Court observed, “the appellate court passe[d] on the merits of [the] case only after having the full benefit of written briefs and oral argument by counsel.” Id., at 356. In contrast, when a poor person appealed, “the appellate court [wa]s forced to prejudge the merits [of the case] before it c[ould] even determine whether counsel should be provided.” Ibid.
In Ross, we explained why the rationale of Douglas did not extend to the appointment of counsel for an indigent seeking to pursue a second-tier discretionary appeal to the North Carolina Supreme Court or, thereafter, certiorari review in this Court. The North Carolina Supreme Court, in common with this Court we perceived, does not sit as an error-correction instance. 417 U. S., at 615. Principal criteria for state high court review, we noted, included “whether the subject matter of the appeal has significant public interest, whether the cause involves legal principles of major significance to the jurisprudence of the State, [and] whether the decision below is in probable conflict” with the court’s precedent. Ibid, (internal quotation marks omitted). Further, we pointed out, a defendant who had already bene *612 fited from counsel's aid in a first-tier appeal as of right would have, “at the very least, a transcript or other record of trial proceedings, a brief on his behalf in the Court of Appeals setting forth his claims of error, and in many cases an opinion by the Court of Appeals disposing of his case.” Ibid.
II
A
Michigan has a two-tier appellate system comprising the State Supreme Court and the intermediate Court of Appeals. The Michigan Supreme Court hears appeals by leave only. Mich. Comp. Laws Ann. § 770.3(6) (West Supp. 2004). Prior to 1994, the Court of Appeals adjudicated appeals as of right from all criminal convictions. Bulger, 462 Mich., at 503-504, 614 N. W. 2d, at 106-107. To reduce the workload of the Court of Appeals, a 1994 amendment to the Michigan Constitution changed the process for appeals following plea-based convictions. Id., at 504, 614 N. W. 2d, at 106-107. As amended, the State Constitution provides: “In every criminal prosecution, the accused shall have the right... to have an appeal as a matter of right, except as provided by law an appeal by an accused who pleads guilty or nolo contendere shall be by leave of the court.” Mich. Const., Art. 1, §20.
A defendant convicted by plea who seeks review in the Michigan Court of Appeals must now file an application for leave to appeal pursuant to Mich. Ct. Rule 7.205 (2005). In response, the Court of Appeals may, among other things, “grant or deny the application; enter a final decision; [or] grant other relief.” Rule 7.205(D)(2). If the court grants leave, “the case proceeds as an appeal of right.” Rule 7.205(D)(3). The parties agree that the Court of Appeals, in its orders denying properly filed applications for leave, uniformly cites “lack of merit in the grounds presented” as the basis for its decision. See Tr. of Oral Arg. 21-22,24, 39.
Under Michigan law, most indigent defendants convicted by plea must proceed pro se in seeking leave to appeal. *613 Michigan Comp. Laws Ann. § 770.3a (West 2000) provides, in relevant part, that a “defendant who pleads guilty, guilty but mentally ill, or nolo contendere shall not have appellate counsel appointed for review of the defendant’s conviction or sentence,” except that:
“(2) The trial court shall appoint appellate counsel for an indigent defendant [if the] prosecuting attorney seeks leave to appeal[, the] defendant’s sentence exceeds the upper limit of the minimum sentence range of the applicable sentencing guidelines[, the] court of appeals or the supreme court grants the defendant’s application for leave to appeal[, or the] defendant seeks leave to appeal a conditional plea....
“(3) The trial court may appoint appellate counsel [if the] defendant seeks leave to appeal a sentence based upon an alleged improper scoring of an offense variable or a prior record variable[, the] defendant objected to the scoring or otherwise preserved the matter for appeal[, and the] sentence imposed by the court constitutes an upward departure from the upper limit of the minimum sentence range that the defendant alleges should have been scored.” § 770.3a(lM3).
In People v. Bulger, the Michigan Supreme Court considered whether the Federal Constitution secures a right to appointed counsel for plea-convicted defendants seeking review in the Court of Appeals. 462 Mich., at 511, 614 N. W. 2d, at 110. Recognizing Douglas and Ross as the guiding decisions, 462 Mich., at 511-516, 614 N. W. 2d, at 110-112, the State Supreme Court concluded that appointment of counsel is not required for several reasons: Court of Appeals review following plea-based convictions is by leave and is thus “discretionary,” id., at 506-508, 519, 614 N. W. 2d, at 108, 113; “[p]lea proceedings are... shorter, simpler, and more routine than trials,” id., at 517,614 N. W. 2d, at 112; and by entering a plea, a defendant “accede[s] to the state’s fundamental in *614 terest in finality,” ibid. In People v. Harris, the Michigan Supreme Court, adhering to Bulger, upheld the constitutionality of § 770.8a. 470 Mich. 882, 681 N. W. 2d 653.
B
Petitioner Halbert pleaded nolo contendere to two counts of second-degree criminal sexual conduct. App. 23. During Halbert’s plea colloquy, the trial court asked Halbert, “You understand if I accept your plea you are giving up or waiving any claim of an appeal as of right,” and Halbert answered, “Yes, sir.” Id., at 22. The court then advised Hal-bert of certain instances in which, although the appeal would not be as of right, the court nevertheless “must” or “may” appoint appellate counsel. The court did not tell Halbert, however, that it could not appoint counsel in any other circumstances, including Halbert’s own case:
“THE COURT: You understand if I accept your plea and you are financially unable to retain a lawyer to represent you on appeal, the Court must appoint an attorney for you if the sentence I impose exceeds the sentencing guidelines or you seek leave to appeal a conditional plea or the prosecutor seeks leave to appeal or the Court of Appeals or Supreme Court grants you leave to appeal. Under those conditions I must appoint an attorney, do you understand that?
“THE DEFENDANT: Yes, sir.
“THE COURT: Further, if you are financially unable to retain a lawyer to represent you on appeal, the Court may appoint an attorney for you if you allege an improper scoring of the sentencing guidelines, you object to the scoring at the time of the sentencing and the sentence I impose exceeds the sentencing guidelines as you allege it should be scored. Under those conditions I may appoint an attorney for you, do you understand that?
*615 “THE DEFENDANT: Yes, sir.” Id., at 22-23 (alteration omitted).[1]
At Halbert’s sentencing hearing, defense counsel requested that the sentences for the two counts run concurrently, but urged no error in the determination of Halbert’s exposure under the Michigan sentencing guidelines. Id., at 33. The trial court set Halbert’s sentences to run consecutively. Id., at 35. Halbert submitted a handwritten motion to withdraw his plea the day after sentencing. Denying the motion, the trial court stated that Halbert’s “proper remedy is to appeal to the Michigan Court of Appeals.” Id., at 43.
Twice thereafter and to no avail, Halbert asked the trial court to appoint counsel to help him prepare an application for leave to appeal to the intermediate appellate court. He submitted his initial request on a form provided by the State. Id., at 46-50, 53-57. The trial court denied the request. Id., at 44-45, 51-52. Halbert next sent the trial court a letter and accompanying motion, again seeking appointed counsel. Id., at 58. Halbert stated that his sentence had been misscored and that he needed the aid of counsel to preserve the issue before undertaking an appeal. Id., at 58, 61-62. Halbert also related that he had “required special education due to learning disabilities,” id., at 61, and was “mentally impaired,” id., at 62. To prepare his pro se filings, he noted, *616 he was obliged to rely on the assistance of fellow inmates. Id., at 61. The trial court denied Halbert’s motion; citing Bulger, the court stated that Halbert “does not have a constitutional. . . right to appointment of appellate counsel to pursue a discretionary appeal.” App. 64.
Again using a form supplied by the State and acting pro se, Halbert filed an application for leave to appeal. Id., at 66-71. He asserted claims of sentencing error and ineffective assistance of counsel, id., at 68, and sought, inter alia, remand for appointment of appellate counsel and resentenc-ing, id., at 71. In a standard form order, the Court of Appeals denied Halbert’s application “for lack of merit in the grounds presented.” Id., at 72.
The State Supreme Court, dividing 5 to 2, denied Halbert’s application for leave to appeal to that court. The dissenting justices would have provided for the appointment of counsel, and would have allowed counsel to file a supplemental leave application prior to the Court of Appeals’ reconsideration of Halbert’s pleas. Id., at 84.
We granted certiorari, 543 U. S. 1042 (2005), to consider whether the denial of appointed counsel to Halbert violated the Fourteenth Amendment. We now vacate the judgment of the Michigan Court of Appeals.
Ill
Petitioner Halbert’s case is framed by two prior decisions of this Court concerning state-funded appellate counsel, Douglas and Ross. The question before us is essentially one of classification: With which of those decisions should the instant case be aligned?[2] We hold that Douglas provides the *617 controlling instruction. Two aspects of the Michigan Court of Appeals’ process following plea-based convictions lead us to that conclusion. First, in determining how to dispose of an application for leave to appeal, Michigan’s intermediate appellate court looks to the merits of the claims made in the application. Second, indigent defendants pursuing first-tier review in the Court of Appeals are generally ill equipped to represent themselves.
A defendant who pleads guilty or nolo contendere in a Michigan court does not thereby forfeit all opportunity for appellate review. Although he relinquishes access to an appeal as of right, he is entitled to apply for leave to appeal, and that entitlement is officially conveyed to him. See supra, at 612; Mich. Ct. Rule 6.425(E)(2)(a) (2005) (“[T]he defendant is entitled to file an application for leave to appeal.”); see also Advice Concerning Right To Appeal, ¶ 1 (“You are entitled to file an application for leave to appeal with the Court of Appeals.”), see supra, at 615, n. 1. Of critical importance, the tribunal to which he addresses his application, the Michigan Court of Appeals, unlike the Michigan Supreme Court, sits as an error-correction instance.[3]
The Court of Appeals may respond to a leave application in a number of ways. It “may grant or deny the application; enter a final decision; grant other relief; request additional material from the record; or require a certified concise statement of proceedings and facts from the court... whose order *618 is being appealed.” Mich. Ct. Rule 7.205(D)(2) (2005). When the court denies leave using the stock phrase “for lack of merit in the grounds presented,” its disposition may not be equivalent to a “final decision” on the merits, i e., the disposition may simply signal that the court found the matters asserted unworthy of the expenditure of further judicial resources. But the court’s response to the leave application by any of the specified alternatives — including denial of leave — necessarily entails some evaluation of the merits of the applicant’s claims.
Michigan urges that review in the Court of Appeals following a plea-based conviction is as “discretionary” as review in the Michigan Supreme Court because both require an application for leave to appeal. See Bulger, 462 Mich., at 506-508, 519, 614 N. W. 2d, at 108, 118; Brief for Respondent 31-34.[4] Therefore, Michigan maintains, Ross is dispositive of this case. The Court in Ross, however, recognized that leave-granting determinations by North Carolina’s Supreme Court turned on considerations other than the commission of error by a lower court, e. g., the involvement of a matter of “significant public interest.” See supra, at 611. Michigan’s Supreme Court, too, sits not to correct errors in individual cases, but to decide matters of larger public import. See Mich. Ct. Rule 7.302(B)(2)-(3) (2005) (criteria for granting leave to appeal to the Michigan Supreme Court include whether a case presents an “issue [of] significant public interest” or “involves legal principles of major significance to the state’s jurisprudence”); Great Lakes Realty Corp. v. Pe *619 ters, 336 Mich. 325, 328-329, 57 N. W. 2d 901, 903 (1953) (equating denial of an application for leave to appeal to the Michigan Supreme Court with denial of a petition for writ of certiorari in this Court); see also this Court’s Rule 10 (considerations guiding decision whether to grant certiorari). By contrast, the Michigan Court of Appeals, because it is an error-correction instance, is guided in responding to leave to appeal applications by the merits of the particular defendant’s claims, not by the general importance of the questions presented.
Whether formally categorized as the decision of an appeal or the disposal of a leave application, the Court of Appeals’ ruling on a plea-convicted defendant’s claims provides the first, and likely the only, direct review the defendant’s conviction and sentence will receive. Parties like Halbert, however, are disarmed in their endeavor to gain first-tier review. As the Court in Ross emphasized, a defendant seeking State Supreme Court review following a first-tier appeal as of right earlier had the assistance of appellate counsel. The attorney appointed to serve at the intermediate appellate court level will have reviewed the trial court record, researched the legal issues, and prepared a brief reflecting that review and research. 417 U. S., at 615. The defendant seeking second-tier review may also be armed with an opinion of the intermediate appellate court addressing the issues counsel raised. A first-tier review applicant, forced to act pro se, will face a record unreviewed by appellate counsel, and will be equipped with no attorney’s brief prepared for, or reasoned opinion by, a court of review.
The Bulger court concluded that “a pro se defendant seeking discretionary review” in the Court of Appeals is adequately armed because he “will have the benefit of a transcript, trial counsel’s framing of the issues in [a] motion to withdraw, and the trial court’s ruling on the motion.” 462 Mich., at 518, 614 N. W. 2d, at 113; see also Mich. Ct. Rule 6.005(H)(4) (2005) (trial counsel must file “postconviction mo *620 tions the lawyer deems appropriate, including motions . . . to withdraw plea, or for resentencing”); post, at 634-635 (Thomas, J., dissenting).[5] But we held in Swenson v. Bosler, 386 U. S. 258 (1967) (per curiam), that comparable materials prepared by trial counsel are no substitute for an appellate lawyer’s aid. There, the Missouri court reviewing an indigent’s post-trial appeal had before it a transcript plus trial counsel’s “notice of appeal and .. . motion for new trial which specifically designated the issues which could be considered on direct appeal.” Id., at 259. The absence of counsel in these circumstances, Bosler held, “violated [the defendant’s] Fourteenth Amendment rights, as defined in Douglas.” Ibid. Adhering to Douglas, we explained that “[t]he assistance of appellate counsel in preparing and submitting a brief to the appellate court which defines the legal principles upon which the claims of error are based and which designates and interprets the relevant portions of the [record] may well be of substantial benefit to the defendant [and] may not be denied . .. solely because of his indigency.” 386 U. S., at 259. Although Bosler involved a post-trial rather than postplea appeal, the Court recognized that a transcript and motion by trial counsel are not adequate stand-ins for an appellate lawyer’s review of the record and legal research. Without guides keyed to a court of review, a pro se applicant’s entitlement to seek leave to appeal to Michigan’s intermediate court may be more formal than real.
Persons in Halbert’s situation are particularly handicapped as self-representatives. As recounted earlier this Term, “[approximately 70% of indigent defendants represented by appointed counsel plead guilty, and 70% of those convicted *621 are incarcerated.” Kowalski, 543 U. S., at 140 (GINSBURG, J., dissenting). “[Sixty-eight percent] of the state prison populatio[n] did not complete high school, and many lack the most basic literacy skills.” Ibid, (citation omitted). “[S]even out of ten inmates fall in the lowest two out of five levels of literacy — marked by an . inability to do such basic tasks as write a brief letter to explain an error on a credit card bill, use a bus schedule, or state in writing an argument made in a lengthy newspaper article.” Ibid. Many, Halbert among them, have learning disabilities and mental impairments. See U. S. Dept, of Justice, Bureau of Justice Statistics, A. Beck & L. Mafuschak, Mental Health Treatment in State Prisons, 2000, pp. 3-4 (July 2001), http://www.ojp.usdo;]'. gov/bjs/pub/pdf/mhtspOO.pdf (identifying as mentally ill some 16% of state prisoners and noting that 10% receive psychotropic medication).
Navigating the appellate process without a lawyer’s assistance is a perilous endeavor for a layperson, and well beyond the competence of individuals, like Halbert, who have little education, learning disabilities, and mental impairments. See Evitts, 469 U. S., at 393 (“[T]he services of a lawyer will for virtually every layman be necessary to present an appeal in a form suitable for appellate consideration on the merits.”); Gideon v. Wainwright, 372 U. S. 335, 345 (1963) (“Even the intelligent and educated layman has small and sometimes no skill in the science of law.” (quoting Powell v. Alabama, 287 U. S. 45, 69 (1932))). Appeals by defendants convicted on their pleas may involve “myriad and often complicated” substantive issues, Kowalski, 543 U. S., at 145 (Ginsburg, J., dissenting), and may be “no less complex than other appeals,” id., at 141 (same). One who pleads guilty or nolo contendere may still raise on appeal
“constitutional defects that are irrelevant to his factual guilt, double jeopardy claims requiring no further factual record, jurisdictional defects, challenges to the sufficiency of the evidence at the preliminary examination, *622 preserved entrapment claims, mental competency claims, factual basis claims, claims that the state had no right to proceed in the first place, including claims that a defendant was charged under an inapplicable statute, and claims of ineffective assistance of counsel.” Ibid. (quoting Bulger, 462 Mich., at 561, 614 N. W. 2d, at 133-134 (Cavanagh, J., dissenting); citations omitted).
Michigan’s very procedures for seeking leave to appeal after sentencing on a plea, moreover, may intimidate the un-counseled. See Kowalski, 543 U. S., at 141-142 (Ginsburg, J., dissenting). Michigan Ct. Rule 7.205(A) (2005) requires the applicant to file for leave to appeal within 21 days after the trial court’s entry of judgment. “The defendant must submit five copies of the application ‘stating the date and nature of the judgment or order appealed from; concisely reciting the appellant’s allegations of error and the relief sought; [and] setting forth a concise argument ... in support of the appellant’s position on each issue.’” Kowalski, 543 U. S., at 141 (Ginsburg, J., dissenting) (quoting Rule 7.205(B)(1)). Michigan does provide “a three-page form application accompanied by two pages of instructions for defendants seeking leave to appeal after sentencing on a . . . plea. But th[e] form is unlikely to provide adequate aid to an indigent and poorly educated defendant.” Ibid. It directs the defendant to provide information such as “charge code(s), MCL eitation/PACC Code,” state the issues and facts relevant to the appeal, and “‘state the law that supports your position and explain how the law applies to the facts of your case.’ ” Id., at 141-142 (quoting Application for Leave To Appeal After Sentencing on Plea of Guilty or Nolo Contendere (rev. Oct. 2003), http://courts.michigan.gov/scao/ eourtforms/appeals/cc405.pdf; some internal quotation marks omitted). “This last task would not be onerous for an applicant familiar with law school examinations, but it is a tall order for a defendant of marginal literacy.” Kowalski, 543 U. S., at 142 (Ginsburg, J., dissenting).
*623 While the State has a legitimate interest in reducing the workload of its judiciary, providing indigents with appellate counsel will yield applications easier to comprehend.[6] Michigan’s Court of Appeals would still have recourse to summary denials of leave applications in cases not warranting further review. And when a defendant’s case presents no genuinely arguable issue, appointed counsel may so inform the court. See Anders v. California, 386 U. S. 738, 744 (1967) (“[I]f counsel finds [the] case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw,” filing “a brief referring to anything in the record that might arguably support the appeal.”); Tr. of Oral Arg. 27 (“[I]n a significant percentage of the cases ...[,] after reviewing the case, the appellate counsel then concludes that there is no merit. . . , at which point then either a motion to withdraw may be filed or . .. the Michigan equivalent] of an Anders brief.”).
Michigan contends that, even if Halbert had a constitutionally guaranteed right to appointed counsel for first-level appellate review, he waived that right by entering a plea of nolo contendere. We disagree. At the time he entered his plea, Halbert, in common with other defendants convicted on their pleas, had no recognized right to appointed appellate counsel he could elect to forgo.[7] Moreover, as earlier ob *624 served, the trial court did not tell Halbert, simply and directly, that in his case, there would be no access to appointed counsel. See supra, at 614-615; cf. Iowa v. Tovar, 541 U. S. 77, 81 (2004) (“Waiver of the right to counsel, as of constitutional rights in the criminal process generally, must be a ‘knowing, intelligent ac[t] done with sufficient awareness of the relevant circumstances.’” (quoting Brady v. United States, 397 U. S. 742, 748 (1970))).[8]
* * *
For the reasons stated, we vacate the judgment of the Michigan Court of Appeals and remand the case for further proceedings not inconsistent with this opinion.

It is so ordered.

 Michigan provided Halbert with a form titled “Notice of Rights After Sentencing (After Plea of Guilty/Nolo Contendere) and Request for Appointment of Attorney.” App. 46-50,53-57. Resembling the advice conveyed to Halbert by the trial judge, the form described the circumstances in which counsel must or may be appointed, but did not expressly state that, absent such circumstances, counsel would not be provided. As revised, Michigan’s notice form now states: “You are not entitled to have a lawyer appointed at public expense to assist you in filing an application for leave to appeal . . . .” Advice Concerning Right To Appeal After Plea of Guilty/Nolo Contendere (rev. June 2004), available at http^/courts. michigan.gov/scao/courtforms/appeals/cc265b.pdf (all Internet materials as visited June 21, 2005, and available in Clerk of Court’s case file).

 The question at hand, all Members of the Court agree, is whether this case should be bracketed with Douglas v. California, 372 U. S. 353 (1963), because appointed counsel is sought for initial review before an intermediate appellate court, or with Ross v. Moffitt, 417 U. S. 600 (1974), because a plea-convicted defendant must file an application for leave to appeal. See post, at 628 (Thomas, J., dissenting) (“Michigan’s system bears some similarity to the state systems at issue in both Douglas and Ross.”).

 Both the majority and the dissent in People v. Bulger, 462 Mich. 495, 614 N. W. 2d 103 (2000), described the State’s intermediate appellate court’s function as error correction. Compare id., at 516-518, 614 N. W. 2d, at 112-113 (in the majority’s view, the Court of Appeals could perform its review function, despite the defendant’s lack of representation, because plea-convicted defendants have ample aid for preservation of their claims in the trial court and ineffective assistance of counsel should be readily apparent to the Court of Appeals from the record), with id., at 543, 614 N. W. 2d, at 125 (Cavanagh, J., dissenting) (“[T]he function of our Court of Appeals is reviewing the merits and correcting errors made by the lower courts.”).

 The Bulger opinions nowhere describe the discretion exercised by the Michigan Court of Appeals as so unconstrained that it may “deny leave [to appeal] for any reason, or for no reason at all.” Post, at 633 (Thomas, J., dissenting). Compare Bulger, 462 Mich., at 511, 614 N. W. 2d, at 110 (appeal to intermediate court is discretionary because a defendant must “obtai[n] leave”); id., at 506-508, 519, 614 N. W. 2d, at 108, 113, with id., at 542-543, 614 N. W. 2d, at 125 (Cavanagh, J., dissenting) (Court of Appeals may deny leave to appeal where error is not outcome determinative).

 This assumes that trial counsel -will recognize, in a postconviction motion, any issues appropriate for preservation for appellate review. A lawyer may not, however, perceive his own errors or the need for such a motion. Defense counsél here, for example, whose performance Halbert alleged to be ineffective, apparently did not assist Halbert in preparing and filing his motion to withdraw his plea. See supra, at 615-616.

 “No one questions,” the Bulger court stated, “that the appointment of appellate counsel at state expense would be more efficient and helpful not only to defendants, but also to the appellate courts.” 462 Mich., at 520, 614 N. W. 2d, at 114.

 Assuming, as Justice Thomas suggests, that whether Michigan law conferred on Halbert a postplea right to appointed appellate counsel is irrelevant to whether Halbert waived a federal constitutional right to such counsel, post, at 639-640, the remainder of the dissent’s argument slips from our grasp, see post, at 640-641. No conditional waiver — “on[e] in which a defendant agrees that, if he has ... a right, he waives it,” post, at 640 — is at issue here. Further, nothing in Halbert’s plea colloquy indicates that he waived an “unsettled,” but assumed, right to the assistance of appointed appellate counsel, postplea. See post, at 640-641.

 We are unpersuaded by the suggestion that, because a defendant may be able to waive his right to appeal entirely, Michigan can consequently exact from him a waiver of the right to government-funded appellate counsel. See Tr. of Oral Arg. 14. Many legal rights are “presumptively waivable,” post, at 637 (Thomas, J., dissenting), and if Michigan were to require defendants to waive all forms of appeal as a condition of entering a plea, that condition would operate against moneyed and impoverished defendants alike. A required waiver of the right to appointed counsel’s assistance when applying for leave to appeal to the Michigan Court of Appeals, however, would accomplish the very result worked by Mich. Comp. Laws Ann. § 770.3a (West 2000): It would leave indigents without access to counsel in that narrow range of circumstances in which, our decisions hold, the State must affirmatively ensure that poor defendants receive the legal assistance necessary to provide meaningful access to the judicial system. See Douglas, 372 U. S., at 357-358; M. L. B. v. S. L. J., 519 U. S. 102, 110-113 (1996); cf. Griffin v. Illinois, 351 U. S. 12, 23 (1956) (Frankfurter, J., concurring in judgment) (ordinarily, “a State need not equalize economic conditions” between criminal defendants of lesser and greater wealth).