In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-3088

GREGORY JEAN-PAUL,

*Petitioner-Appellant,*

*v.*

TIMOTHY DOUMA,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 12-C-697 — Patricia J. Gorence, *Magistrate Judge.*

ARGUED NOVEMBER 18, 2015 — DECIDED DECEMBER 31, 2015

Before POSNER, MANION, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Gregory Jean-Paul, a Wisconsin prisoner, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 arguing that he did not knowingly and intelligently waive his right to counsel on his direct criminal appeal in state court. The district court denied relief. We affirm the judgment because the state appellate court reasonably concluded that his waiver was knowing and intelligent.

## I. Background

Jean-Paul was convicted in 2007 of state drug crimes and sentenced to 13 years' confinement and 12 years' extended supervision. He appealed, but vacillated on whether he wanted to represent himself on appeal. In January 2008 he talked with his appointed counsel, Patrick Donnelly. Donnelly told his client that he intended to file a "no-merit report," *see* WIS. STAT. § 809.32, unless Jean-Paul wanted to proceed pro se, in which case Donnelly would simply ask to withdraw. Jean-Paul replied that he wanted to proceed pro se. To confirm, Donnelly wrote to Jean-Paul, advising him that if he signed and returned a "Statement of Decision to Proceed *Pro Se*," Donnelly would withdraw from Jean-Paul's appeal. Donnelly noted that "[t]he deadline for taking action in your case is currently March 14, 2008."

Two days later, Jean-Paul reconsidered. He told Donnelly that instead of proceeding pro se, he wanted all "documents concerning my case" sent to him so that he could "fully and thoroughly respond to the No Merit report." Donnelly acknowledged Jean-Paul's change of heart and promised to submit the no-merit report. Donnelly also advised Jean-Paul that the deadline for the no-merit was *not* on March 14, but rather 180 days from when the last transcript from the trial had been released. *See* § 809.32(2)(a). The transcript was released on November 13, 2007, which meant that the report wasn't due until May 2008.

By March 14, 2008, however, Jean-Paul was looking for the no-merit report. He asked Donnelly and the court clerk if it had been filed. Donnelly responded that the no-merit report was due by May 9, and he would file it before then. The clerk answered that the report was due May 12.

In April Jean-Paul changed his mind again, so Donnelly asked the appellate court for permission to withdraw from the case. With his motion Donnelly submitted a "Statement of Decision to Proceed *Pro Se*" signed by Jean-Paul. The statement, dated April 4, read as follows:

> I, Gregory Jean-Paul declare that I have decided to proceed *pro se* with my appeal. I understand that *pro se* means that I will represent myself in this matter without the assistance of an attorney. I have made my decision to appeal *pro se* after talking with my appointed counsel, Patrick M. Donnelly, Assistant State Public Defender, and I understand that the ramifications of my decision to be as follows:
>
> 1. I understand that by deciding to represent myself I am giving up my right to be represented on appeal by Mr. Donnelly, who was appointed to represent me by the Office of the State Public Defender. I understand that this appeal is my one appeal of right from my conviction and that no other attorney will be appointed by the Office of the State Public Defender to represent me in this case in the future.
>
> 2. I understand that there are dangers and disadvantages in representing myself and advantages in having an attorney represent me because an attorney familiar with the law may be in a better position to discover factual information or legal arguments which could assist me in seeking postconviction relief. I also

> understand that even though I am not an attorney, I will be expected to follow the statutes, rules, and procedures for filing postconviction motions, appeals and subsequent briefing in the court of appeals. I understand that I will be personally responsible for all aspects of my appeal, including the obligation to file post-conviction motions or a notice of appeal by the current dead-line, March 14, 2008, unless I personally seek and obtain an additional extension of time from the court of appeals.
>
> I have discussed with my attorney my right to a no-merit report and I have decided to proceed *pro se*. This decision is entirely voluntary on my part and is not the result of any threats or promises from anyone.

The Wisconsin Court of Appeals accepted Jean-Paul's waiver and granted Donnelly's motion to withdraw.

Proceeding pro se, Jean-Paul filed several challenges to his conviction. First, he voluntarily dismissed his appeal and brought a state postconviction motion, which in Wisconsin precedes a direct appeal. *See* WIS. STAT. § 974.02; *Morales v. Boatwright*, 580 F.3d 653, 656–57 (7th Cir. 2009). He argued that his trial counsel had been ineffective for failing to listen to certain audiotapes. This motion was rejected. Jean-Paul then refiled his direct appeal, and the state appellate court affirmed his conviction.

Next, Jean-Paul filed a petition for habeas corpus in the state appellate court challenging the validity of his waiver of counsel on direct appeal. He argued that he was not compe-

tent to waive his right to counsel and had not done so knowingly or intelligently. In addition to the correspondence with his counsel recounted above, Jean-Paul submitted an affidavit stating, without more, that "I Jean-Paul, Gregory, swear that I can not read or write." An affidavit of another prisoner repeats that Jean-Paul is illiterate and asserts that he, the fellow prisoner, had prepared Jean-Paul's legal filings. Based on this evidence, Jean-Paul argued that he had misunderstood the April 4 statement he signed. He argued that he thought it was a requirement for his lawyer to file a no-merit report, not that it was a waiver of his right to counsel on appeal.

The Wisconsin Court of Appeals denied relief. The court explained that Jean-Paul may now regret "his choice to proceed with the assistance of a jail-house lawyer," but that this did "not undermine the validity of his initial, knowing and voluntary decision to represent himself" on appeal. Other unrelated postconviction petitions and appeals were unsuccessful.

Moving next to federal court, Jean-Paul filed a petition for habeas relief under § 2254. He renewed his claim that he had not knowingly and intelligently waived his right to appellate counsel. The district judge denied relief, holding that the state appellate court had applied the right standard and reached a reasonable result. At most, the judge explained, Jean-Paul had "demonstrated that [his waiver of appellate counsel] is a decision he has come to regret, which does not make it unknowing or unintelligent."

We granted a certificate of appealability on the question whether Jean-Paul was denied his Sixth Amendment right to appellate counsel.[1]

## II. Analysis

Criminal defendants have a Sixth Amendment right to counsel on a direct appeal taken as of right. *Halbert v. Michigan*, 545 U.S. 605, 610 (2005); *Douglas v. California*, 372 U.S. 353, 356–57 (1963). To waive that right, a defendant must be competent to waive and must do so knowingly and intelligently. *Godinez v. Moran*, 509 U.S. 389, 400–01 (1993). Whether a defendant is competent to waive counsel turns on "whether he has the *ability* to understand the proceedings." *Id.* at 401 n.12. "[T]he 'knowing and voluntary' inquiry, by contrast, is to determine whether the defendant actually *does* understand the significance and consequences of a particular decision and whether the decision is uncoerced." *Id.*

As an initial matter, the State argues procedural default, contending that Jean-Paul did not "fairly present" to the state courts the argument he now pursues—that his waiver was not knowing and intelligent. *See Lewis v. Sternes*, 390 F.3d 1019, 1025–26 (7th Cir. 2004); *Perruquet v. Briley*, 390 F.3d 505, 513 (7th Cir. 2004). We disagree. Jean-Paul's state habeas petition stated several times that a waiver of his right to counsel must be made "knowingly, intelligently and voluntarily." True, he emphasized that he was not "competent to proceed pro se." But he also argued that he misun-

---

[1] We recruited pro bono counsel to assist Jean-Paul on appeal and thank E. King Poor and Matthew T. Ingersoll of Quarles & Brady LLC for accepting the appointment and ably discharging their duties.

derstood the waiver form and thought it was required for his attorney to file a no-merit report. Jean-Paul thus "framed the claim in terms so particular as to call to mind a specific constitutional right." *See Perruquet*, 390 F.3d at 519–20 (internal quotation marks and citation omitted).

The State also maintains that Jean-Paul forfeited this claim by failing to raise it in the district court. Again, the State is incorrect. Jean-Paul's § 2254 petition specifically alleges that he "didn't have the required information … to warn a defendant of the risk of counsel withdraw or a defendant disadvantage proceeding pro se [sic]." This language recalls the warnings a defendant must receive before waiving his right to trial counsel, *see Faretta v. California*, 422 U.S. 806, 835 (1975), and the district court appropriately treated the petition as questioning whether Jean-Paul's waiver of appellate counsel was "knowing and voluntary."

Turning to the merits of the claim, Jean-Paul faces a stiff burden. He must show that the state appellate court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see Carter v. Douma*, 796 F.3d 726, 733 (7th Cir. 2015). The state court's ruling must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Carter*, 796 F.3d at 733 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

The state court's decision was not based on an unreasonable application of clearly established law. The Supreme

Court has held that waiver of the right to counsel must be knowing and intelligent, and has also explained that such a determination is case specific. *See Iowa v. Tovar*, 541 U.S. 77, 88 (2004); *Godinez*, 509 U.S. at 401–02; *Faretta*, 422 U.S. at 835; *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). But as this court recognized in *Speights v. Frank*, 361 F.3d 962, 964–65 (7th Cir. 2004), the Court has also held that the inquiry into the validity of a waiver depends on the stage of the proceedings at which the waiver occurs. *See Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (explaining that a circuit court may "look to circuit precedent to ascertain whether it has already held that the particular point in issue is clearly established by Supreme Court precedent"). A waiver of counsel before trial may require a "give-and-take between the accused and someone trying to educate him about counsel's benefits." *Speights*, 361 F.3d at 964–65 (citing *Tovar*, 541 U.S. at 90). But a waiver of counsel on appeal need not be accompanied by this kind of colloquy because "the major complexities, choices, and risks are past." *Id.* at 965. Instead, "straightforward assent" is enough to waive the right to counsel on appeal. *Id.*

Applying this standard, the state appellate court reasonably concluded that Jean-Paul validly waived his right to counsel on appeal. After he told his lawyer that he wanted to proceed pro se, his lawyer gave him a waiver form that notified him of the perils of doing so, *see Halbert*, 545 U.S. at 621, and he later signed it.

Jean-Paul raises two arguments in response. First, he contends that the form he signed is insufficient as a matter of law. Although it listed the risks of proceeding pro se, it did not explain that if his lawyer filed a no-merit report, the

appellate court must assess it before deciding whether to release counsel. Jean-Paul relies on *Betts v. Litscher*, 241 F.3d 594, 595–96 (7th Cir. 2001), where this court found that a letter from counsel to the appellate court stating only that the defendant had "declined an opportunity to have a no-merit report filed by [his attorney] and elected to proceed pro se with an appeal" was "scant evidence" of waiver. The defendant in that case did not sign counsel's letter, however, and no evidence showed that he understood that if his counsel filed a no-merit report, the state court had to assess that report before permitting his attorney to withdraw. *Id.* at 596.

Here, in contrast, not only did Jean-Paul sign the waiver form, the record supports a finding that he understood that the state appellate court would evaluate any no-merit report. In the signed waiver form, Jean-Paul states that he had "discussed with my attorney my right to a no-merit report." And in his correspondence with Donnelly, Jean-Paul asked for all court papers so he could "fully and thoroughly respond to the No Merit report." This evidence shows that Jean-Paul understood that the appellate court would decide whether to accept Donnelly's no-merit report. This case is thus distinguishable from *Betts*.

Jean-Paul also argues that the state appellate court made an "unreasonable determination of the facts" in finding that his waiver of appellate counsel was knowing and voluntary. He admits that a signed waiver form ordinarily can establish that a defendant has validly waived his right to counsel on appeal. But he argues that his signed waiver is vitiated by other evidence—namely, his correspondence with counsel, which shows "confusion" about deadlines and "vacillation"

about whether to proceed pro se, and the affidavits asserting his inability to read or write. He argues that the state appellate court unreasonably evaluated this evidence when deciding that his signed assent established that his waiver was knowing and voluntary.

A state court's factual finding is unreasonable only if it "ignores the clear and convincing weight of the evidence." *Taylor v. Grounds*, 721 F.3d 809, 817 (7th Cir. 2013) (internal quotation marks and citations omitted). Here, the evidence reasonably supports the state appellate court's factual findings. First, the "vacillation" reflected in the letters shows only that Jean-Paul reconsidered whether to proceed pro se. Jean-Paul points to no case suggesting that when a defendant is initially uncertain about waiving appellate counsel, a later-signed waiver is presumptively suspect.

Second, the confusion about deadlines is irrelevant. It may suggest uncertainty about *when* he needed to sign a waiver, but not *whether* to do so. Finally, the state appellate court reasonably discounted the evidence that Jean-Paul cannot read or write. His inability to read (assuming that's true) does not necessarily imply an inability to understand what is read to him, and Jean-Paul hasn't claimed that the waiver wasn't read to him or that he did not understand it. He *argues* that he thought it had something vaguely to do with the no-merit report, but his affidavit doesn't say that. Although the affidavits *could* support a finding that he was confused about the waiver, the weight of the evidence is not clearly and convincingly in his favor. Accordingly, the state appellate court's factual finding that Jean-Paul validly waived counsel survives habeas review. *See Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015) (explaining that "state-court

factual determinations" are not "unreasonable merely because we would have reached a different conclusion in the first instance" (internal quotation marks, alterations, and citation omitted)).

AFFIRMED.