NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 200102-U

NO. 4-20-0102

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 6, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Adams County |
| COBRETTI MATLICK, | ) | No. 14CF440 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Robert K. Adrian, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Harris and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, holding the trial court properly dismissed
defendant's postconviction petition during first-stage proceedings because
defendant failed to comply with the statutory requirement of section 122-2 of the
Post-Conviction Hearing Act (725 ILCS 5/122-2 (West 2014)) to either attach
affidavits, records, or other evidence to his petition or explain why such evidence
could not be attached.

¶ 2    On December 9, 2019, this court filed a Rule 23 order deciding defendant

Cobretti Matlick's twofold appeal from: (1) the trial court's dismissal of his 2015 postconviction

petition and (2) the trial court's denial of defendant's 2017 motion for leave to file a successive

postconviction petition. Taking each issue in turn, we dismissed defendant's appeal regarding his

2015 petition, concluding: "Having failed to file a timely and properly framed notice of appeal,

defendant was not able to appeal the dismissal of his *pro se* postconviction petition, even if that

was his intent, and this court is without jurisdiction to hear an appeal therefrom." *People v.

Matlick*, 2019 IL App (4th) 170564-U, ¶ 30. We then affirmed the trial court's decision denying

defendant leave to file a successive petition because we "found defendant unable to show 'cause' under the cause and prejudice requirements ***." *Matlick*, 2019 IL App (4th) 170564-U, ¶ 46. We ultimately affirmed the trial court's judgment.

¶ 3        Defendant filed a Motion for Supervisory Order with the Illinois Supreme Court on January 23, 2020. A few weeks later, on February 11, 2020, our supreme court entered a supervisory order directing this court "to treat [defendant's] 'Motion to Request,' filed on December 3, 2015, as a properly perfected appeal from the October 27, 2015 judgment of the Circuit Court of Adams County in case No. 14 CF 440, dismissing [defendant's] postconviction petition." *People v. Matlick*, No. 125697 (Ill. Feb. 11, 2020) (supervisory order). Heeding the supreme court's charge and recognizing we now have jurisdiction to decide defendant's appeal from the dismissal of his 2015 postconviction petition, we must consider whether the trial court erred in dismissing the petition as frivolous and patently without merit.

¶ 4        In simplest terms, defendant challenges the trial court's judgment dismissing his 2015 postconviction petition as erroneous because he properly presented the gist of a constitutional claim. He also challenges section 122-2 of the Post-Conviction Hearing Act (Postconviction Act or Act) (725 ILCS 5/122-2 (West 2014)) as unconstitutional as applied to him. We disagree.

¶ 5                                    I. BACKGROUND

¶ 6        Our Rule 23 order, filed on December 9, 2019, thoroughly set forth the relevant background information for this case. See *Matlick*, 2019 IL App 170564-U, ¶¶ 5-20. For our purposes here, it is sufficient to note defendant entered a negotiated guilty plea to attempt (first degree murder) in exchange for the dismissal of five other charges and a sentence of 20 years in the Illinois Department of Corrections. He never filed a postplea motion or appeal attacking his

plea or sentence. Instead, on August 17, 2015, defendant filed *pro se* a "Section 122-1 Postconviction Petition," alleging, *inter alia*, trial counsel provided him ineffective assistance, the State violated his rights to due process and equal protection, and actual innocence of attempt (first degree murder).

¶ 7        As is relevant now, defendant alleged counsel proved ineffective on four fronts. First, counsel failed "to file a notice of appeal and to otherwise cause an appeal to be perfected on [defendant's] behalf." Second, counsel failed "to investigate the circumstances of the alleged offense(s) in that the battery did not occur because of the victim's duties in fulfilling his official, job related requirements." Third, trial counsel failed to pursue the insanity defense or pursue lesser-included offenses that might be available. Fourth, trial counsel failed "to challenge the attempt statute—720 ILCS 5/8-4" as unconstitutional. Defendant also alleged other constitutional violations, namely, the State violated his rights to due process and equal protection by allowing him to plead guilty while suffering under a mental illness and low intelligence quotient and by restricting his access to legal materials before and after his conviction. Finally, defendant alleged he is actually innocent of attempt (first degree murder).

¶ 8        On October 27, 2015, the trial court dismissed defendant's petition as frivolous and patently without merit, noting the petition was not supported by affidavit or other evidence nor did it include an explanation for why none were attached in violation of section 122-2 of the Postconviction Act (725 ILCS 5/122-2 (West 2014)).

¶ 9        On December 3, 2015, defendant filed a document titled "Motion to Request," which, upon order from the Illinois Supreme Court, we recognize as a properly perfected appeal.

¶ 10                                    II. ANALYSIS

- 3 -

¶ 11    Defendant contends the trial court erroneously dismissed his 2015 postconviction petition as frivolous and patently without merit for failing to satisfy the evidentiary and pleading requirements outlined in the Postconviction Act. Specifically, he argues his situation meets an exception to the statutory requirement that he attach affidavits or other evidence to his petition. Defendant next argues the Postconviction Act is unconstitutional as applied to him. We disagree and affirm the trial court's judgment.

¶ 12                    A. Summary Dismissal

¶ 13    The Postconviction Act "establishes a procedure for determining whether a criminal defendant was convicted in substantial violation of his or her constitutional rights." *People v. Collins*, 202 Ill. 2d 59, 65, 782 N.E.2d 195, 198 (2002) (citing 725 ILCS 5/122-1(a) (West 2000)). Tucked within the Act's procedure is the mandate that a postconviction petition "*must* be *** supported by 'affidavits, records, or other evidence[.]' " (Emphasis added.) *Collins*, 202 Ill. 2d at 65 (quoting 725 ILCS 5/122-2 (West 2000)); see also 725 ILCS 5/122-2 (West 2014). "Where the petition lacks 'affidavits, records, or other evidence supporting its allegations,' the petitioner *must* explain in his pleadings why that evidence is not attached." (Emphasis added.) *People v. Allen*, 2015 IL 113135, ¶ 26, 32 N.E.3d 615 (quoting 725 ILCS 5/122-2 (West 2008)); see also 725 ILCS 5/122-2 (West 2014).

¶ 14    These statutory evidentiary and pleading requirements are not intended to be onerous burdens on what are likely *pro se* petitioners but serve the purpose of "establish[ing] that a petition's allegations are capable of 'objective or independent corroboration.' " *People v. Delton*, 227 Ill. 2d 247, 254, 882 N.E.2d 516, 520 (2008) (quoting *People v. Hall*, 217 Ill. 2d 324, 333, 841 N.E.2d 913, 919 (2005)). In other words, requiring such factual support separates the wheat from the chaff—meritorious claims from unmeritorious claims. So "while a *pro se*

petition is not expected to set forth a complete and detailed factual recitation" or provide copious supporting evidence, it must attach something to support its claims or explain why evidence is absent. *Delton*, 227 Ill. 2d at 254-55. Failure to meet this low threshold of "either attach[ing] the necessary 'affidavits, records, or other evidence' or explain[ing] their absence is 'fatal' to a post-conviction petition [citation] and by itself justifies the petition's summary dismissal." *Delton*, 227 Ill. 2d at 255 (quoting *Collins*, 202 Ill. 2d at 66). We review *de novo* a court's summary dismissal of a postconviction petition. *Delton*, 227 Ill. 2d at 255.

¶ 15        Defendant acknowledges he attached no affidavits, records, or other evidence to his 2015 petition. But he contends "it is well-established that when the claim is apparent on the face of the record, or relies upon the kind of information which would be difficult if not impossible for a *pro se* petitioner to obtain, [section 122-2's] requirement is relaxed." To support this "well-established" proposition, he directs our attention to *People v. Ramirez*, 402 Ill. App. 3d 638, 641, 934 N.E.2d 1008, 1013 (2010), where this court said, "the failure to attach independent corroborating documentation or explain its absence may be excused where the petition contains facts sufficient to infer that *the only* affidavit the defendant could have furnished, other than his own sworn statement, was that of his attorney." (Emphasis added.)

¶ 16        At oral argument, defense counsel said he believed there was no affidavit defendant could have presented to support his claims. Focusing on defendant's claim that counsel failed to perfect an appeal on defendant's behalf, counsel argued defendant could not elaborate upon or corroborate that claim because the record clearly detailed the allegation (no notice of appeal was filed) and the only other affidavit defendant could produce (other than his own) would be from trial counsel. This ignores the simplicity of an affidavit from defendant indicating he asked or directed his trial counsel to file an appeal on his behalf.

¶ 17         Further, defense counsel misunderstands the petition. Defendant alleged more than ineffective assistance of counsel. His petition alleged due process and equal protection violations by the State in allowing him to plead guilty while suffering a mental illness and depriving him access to a law library. He could have attached affidavits from someone familiar with his mental illness or his limited law library access. He could have attached some other evidence to support these claims, like documentation of mental health or law library access. His petition also alleged actual innocence. For this claim, defendant's own affidavit could have sufficed. Defendant could have (and should have) attached affidavits, records, or other evidence to support these claims, and he did not.

¶ 18         Even if defendant's petition alleged only ineffective assistance of counsel, his claims not relating to counsel's failure to appeal could have been supported by affidavits, records, or other evidence. For example, defendant alleged his trial counsel failed to investigate the circumstances of his offense, which defendant contends were unrelated to the victim's position as a correctional officer or performance of his official duties and, if proven, would have removed the sentencing enhancement. Defendant, therefore, could have (and should have) supported this allegation with evidence. "It is of course well settled that a claim that trial counsel failed to investigate *** must be supported by an affidavit from [a] proposed witness" who could support the claim. *People v. Jones*, 399 Ill. App. 3d 341, 371, 927 N.E.2d 710, 734 (2010). So defendant could have supported this claim with an affidavit from someone other than his attorney, *e.g.*, the victim, whom he knew outside of the jail as the brother of his current girlfriend; or the same girlfriend he said he was still dating at the time he filed his postconviction petition, and who, it is reasonable to assume, would have corroborated his statements; or from defendant's cohorts in the jail.

¶ 19        More importantly, defendant fails to provide any explanation for why he did not attach an affidavit, records, or other evidence to the petition. In *Collins*, the supreme court, while recognizing the difficulty some *pro se* postconviction petitioners may have securing the necessary "affidavits, records, or other evidence," said nevertheless, "[t]his does not mean, however, that the petitioners in such cases are relieved of bearing any burden whatsoever." *Collins*, 202 Ill. 2d at 68. To be sure, section 122-2 makes it clear that the petitioner who is unable to obtain the necessary "affidavits, records, or other evidence" must at least explain why such evidence is unobtainable. Here, defendant did neither. Defendant's declaration, though unsworn and incapable of serving as an affidavit, could have provided an explanation of why he did not attach evidence. But it gives no such explanation. It details defendant's problems and leaves the reader to connect the dots that these problems provide the explanation section 122-2 requires. We will not connect those dots for defendant.

¶ 20        Defendant ultimately failed to provide even his own affidavit detailing his constitutional allegations, which probably would have satisfied section 122-2's low threshold. Defendant's petition complies with neither the letter nor the substance of section 122-1. There are no attached affidavits, records, or other evidence—nor an explanation for their absence. In *Collins*, the court, when faced with a similar deficiency, noted, "defendant is asking to be excused not only from section 122-2's *evidentiary* requirements but also from section 122-2's *pleading* requirements. Nothing in the Act authorizes such a comprehensive departure." (Emphases in original.) *Collins*, 202 Ill. 2d at 68. There was likely evidence he could have presented, including his own affidavit, to support his claims and show them capable of objective or independent corroboration. All told, defendant failed to attach affidavits, records, or other evidence to his petition or, alternatively, explain their absence as mandated by section 122-2 of

the Postconviction Act. Even examining this *pro se* petition with "a lenient eye" or giving it "a liberal construction" (*People v. Hodges*, 234 Ill. 2d 1, 21, 912 N.E.2d 1204, 1214 (2009)), we cannot overlook defendant's omission. Since this failure alone justifies summary dismissal, we need not consider whether the petition presented the gist of a constitutional claim, and we hold the trial court did not err in dismissing defendant's petition. See *Collins*, 202 Ill. 2d at 66; *Delton*, 227 Ill. 2d at 255.

¶ 21                     B. Postconviction Act is Constitutional

¶ 22          Defendant also levies a constitutional challenge against the Postconviction Act, alleging it deprives him of the assistance of counsel during "a 'first appeal as of right.' " Specifically, defendant argues the United States Constitution required the State to appoint him counsel for the first-stage postconviction proceedings because these postconviction proceedings provided the initial review for the constitutional errors in his case. Defendant carefully confines his constitutional challenge to his particular facts, *i.e.*, a guilty plea with no direct appeal due to counsel's ineffectiveness. We, however, find no constitutional infirmity in the Act.

¶ 23          A challenge to the constitutionality of a statute presents a legal question we review *de novo*. *People v. Minnis*, 2016 IL 119563, ¶ 21, 67 N.E.3d 272. We begin our analysis with the presumption that all statutes are constitutional. *Minnis*, 2016 IL 119563, ¶ 21. Accordingly, "[t]he party challenging the constitutionality of a statute has the burden of *clearly* establishing its invalidity." (Emphasis added.) *Minnis*, 2016 IL 119563, ¶ 21. When evaluating the challenged statute, we "must construe [it] so as to uphold its constitutionality, if reasonably possible." *Minnis*, 2016 IL 119563, ¶ 21.

¶ 24          Defendant has not met his burden of clearly establishing the Act is unconstitutional. His brief acknowledges, citing *People v. Ligon*, 239 Ill. 2d 94, 109-11, 940

N.E.2d 1067, 1077-79 (2010), "it is well-settled that there is no constitutional right to postconviction counsel; it is a legislative blessing granted to a petitioner who reaches the second stage of proceedings." And he is right. Our supreme court has said, "[t]here is no federal constitutional right to the assistance of counsel connected with proceedings seeking collateral relief, even where those proceedings are the first tier of review for an ineffective assistance of counsel claim." *Ligon*, 239 Ill. 2d at 113 (citing *Martinez v. Schriro*, 623 F.3d 731 739-40 (9th Cir. 2010), *overruled on other grounds by Martinez v. Ryan*, 566 U.S. 1 (2012)); see also *People v. Suarez*, 224 Ill. 2d 37, 42, 862 N.E.2d 977, 979 (2007); *People v. Turner*, 187 Ill. 2d 406, 410, 719 N.E.2d 725, 727-28 (1999); *People v. Porter*, 122 Ill. 2d 64, 77, 521 N.E.2d 1158, 1163 (1988). There is no federal or state case that states otherwise. *Ligon*, 239 Ill. 2d at 113 (collecting cases).

¶ 25        Despite this "well-settled" precedent, defendant challenges the Act's constitutionality based on his view that three United States Supreme Court cases "(to some extent) seem to suggest the right to counsel on appeal may exist when the postconviction venue is the first place to present a claim of counsel's ineffectiveness—a collateral proceeding providing initial review." Essentially, defendant asks us to find the Act unconstitutional based on an implicit suggestion patched together from three cases, none of which are directly on point. In *Coleman v. Thompson*, 501 U.S. 722 (1991), and *Ryan*, the Supreme Court analyzed procedural default for purposes of federal habeas proceedings. In both cases the Court declined to consider, let alone decide, whether there existed an exception to the well-settled rule that petitioners had no constitutional right to counsel during state postconviction proceedings. *Ryan*, 566 U.S. at 8-9; *Coleman*, 501 U.S. at 755. We fail to see how *Ryan* and *Coleman clearly establish* that the

Postconviction Act unconstitutionally deprived defendant of the assistance of counsel during first-stage proceedings.

¶ 26    The third case on which defendant relies, *Halbert v. Michigan*, 545 U.S. 605 (2005), likewise fails to clearly establish the Act is unconstitutional. There, the Supreme Court considered the provision in Michigan's state constitution "provid[ing] that 'an appeal by an accused who pleads guilty or *nolo contendere* shall be by leave of the court.' " *Halbert*, 545 U.S. at 609 (citing Mich. Const. Art. 1, § 20). Simply put, under Michigan's constitution defendants who plead guilty or *nolo contendere* must first petition the trial court for permission to appeal their plea or sentence to Michigan's Court of Appeals. Poor defendants often had to petition the trial court *pro se*. In Halbert's case, he pleaded *nolo contendere* and then wanted to apply for leave to appeal his plea. He petitioned the trial court to appoint him counsel in this endeavor. The trial court and Michigan Court of Appeals denied Halbert's request for counsel, the Michigan Supreme Court declined to review the matter, and the United States Supreme Court granted *certiorari*. *Halbert*, 545 U.S. at 609. This is *Halbert*'s procedural posture—an indigent defendant denied assistance of counsel for the initial, direct review of a conviction, what the Court deemed an "indigent defendant's first-tier appeal as of right." *Halbert*, 545 U.S. at 611.

¶ 27    The Supreme Court held "the Due Process and Equal Protection Clauses require the appointment of counsel for defendants, convicted on their pleas, who seek access to first-tier review in the Michigan Court of Appeals." *Halbert*, 545 U.S. at 610. The Court identified "[t]wo aspects of the Michigan Court of Appeals' process following plea-based convictions" that supported the holding: (1) the Michigan Court of Appeals considers the merits of a defendant's claims in the petition for leave to appeal and (2) "indigent defendants pursuing first-tier review in the Court of Appeals are generally ill equipped to represent themselves." *Halbert*, 545 U.S. at

617. Relying on these two rationales from the Supreme Court, defendant likens his situation to Halbert's and presses for a similar outcome. Specifically, he argues he is "identically suited to the petitioner in *Halbert*. Both were convicted on their pleas, neither had a direct appeal, and both were seeking first-tier review of their convictions. The only difference—and one without a meaningful distinction—is which court they were required to seek review from."

¶ 28      At first blush, it appears the two rationales the Supreme Court applied in *Halbert* could apply in this unique situation. First, comparable to Michigan's procedure in *Halbert*, in first-stage postconviction proceedings here the trial court considers the merits of the petition's claims, unless of course the court elects to let the petition lie dormant for 90 days and allow it to proceed to second-stage proceedings that way. See 725 ILCS 5/122-2.1 (West 2014). Second, if a defendant here never sought a direct appeal, then he or she never had the benefit of appellate counsel, appellate briefing, or an appellate disposition of the case, which could have aided the defendant acting *pro se* during first-stage postconviction proceedings. But these rationales are muted by the major difference between defendant's and Halbert's situations—collateral review *vis-à-vis* direct review.

¶ 29      Despite defendant's claims to the contrary, procedural posture matters; where and when defendants present their claims matters. No matter how adamantly or repeatedly defendant avers his petition presents on "first-tier" review, he is wrong. As we understand *Halbert*, "first-tier" is not synonymous with "first time," but "first-tier" is akin to "direct review," specifically direct review in the intermediate appellate court. See *Halbert*, 545 U.S. at 619 (discussing and comparing first- and second-tier review); see also *Halbert*, 545 U.S. at 612 (discussing Michigan's appellate process, stating: "Michigan has a two-tier appellate system comprising the State Supreme Court and the intermediate Court of Appeals"). Simply put, "first-

tier" is about place, not time or sequence. Indeed, the Supreme Court noted a Michigan defendant's first-tier review of a guilty plea is the Court of Appeals reviewing and ruling on the petition for leave to appeal. *Halbert*, 545 U.S. at 619. And the Court described that particular first-tier review as "the first, and likely the only, *direct review* the defendant's conviction and sentence will receive." (Emphasis added.) *Halbert*, 545 U.S. at 619.

¶ 30 Under the *Halbert* Court's use of "first-tier," we cannot agree with defendant that both he and Halbert were seeking first-tier review and so, like Halbert, he also has the right to counsel. Unlike Halbert, defendant had the opportunity to withdraw his guilty plea or otherwise appeal his sentence. He elected not to file an appeal. He says now that his trial counsel failed to perfect the appeal. But that failure does not make this postconviction proceeding first-tier review. In other words, just because the first time a defendant decides to challenge a conviction is on postconviction review, rather than on direct review, does not make the postconviction proceeding a first-tier challenge. It is a third-tier challenge, at best, behind the second-tier discretionary petition for leave to appeal to our supreme court.

¶ 31 Since the *Halbert* Court confined its analysis and holding to first-tier, direct review, we will not transplant its rationales to this case on third-tier, collateral review. Unlike defendant, we see a "meaningful distinction" between direct review and postconviction proceedings, evidenced by the case law establishing there is no right to counsel in first-stage postconviction proceedings. *Ligon*, 239 Ill. 2d at 113. Defendant, therefore, failed to meet his burden of clearly establishing the Act is unconstitutional. Our presumption the Postconviction Act is constitutional remains unrebutted.

¶ 32 Because we affirm the trial court's decision dismissing defendant's 2015 petition as frivolous and patently without merit and we find no constitutional violation, we see no reason

to revisit our prior decision affirming the court's decision to deny defendant's 2017 motion for leave to file a successive petition. See *Matlick*, 2019 IL App (4th) 170564-U, ¶¶ 33-50.

¶ 33                                    III. CONCLUSION

¶ 34         For the reasons stated, we affirm the trial court's judgment.

¶ 35         Affirmed.