*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DOUGLAS RAY BEMIS,

Defendant-Appellant.

UNPUBLISHED
October 24, 2019

No. 345714
Roscommon Circuit Court
LC No. 01-004096-FC

Before: STEPHENS, P.J., and SERVITTO and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant, Douglas Ray Bemis, appeals by delayed leave granted[1] his plea-based conviction of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a), in 2001. The conviction arose from defendant's performance of oral sex upon an 11-year-old boy from his neighborhood. Several additional charges relating to the alleged sexual abuse of other neighborhood boys were dropped as a result of the plea agreement. The trial court sentenced defendant, as a second-offense habitual offender, MCL 769.10, to 262 to 524 months' imprisonment.

On appeal, defendant argues that OVs 4, 9, 10, 13 were improperly scored. Only the challenge to the scoring of OV 10 has been preserved.[2] In general, "under the sentencing

---

[1] The prosecution argues that the delayed application should not have been granted and that we should not address defendant's sentencing issues. But, this Court clearly ruled that the application *has* been granted and that the appeal encompasses "the issues raised in the application and supporting brief," *People v Bemis*, unpublished order of the Court of Appeals, entered November 14, 2018 (Docket No. 345714), and the application raised the sentencing issues.

[2] Defendant initially did raise arguments regarding the scoring of OVs 4, 9, and 13, but he later explicitly withdrew the brief containing these arguments and the trial court never ruled on them.

guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013), superseded by statute on other grounds as stated in *People v Rodriguez*, ___ Mich App___; ___ NW2d ___ (2019) (Docket No. 338914), slip op at 3 n 3. "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438. A trial court's findings are clearly erroneous if, after review of the record, this Court is "definitely and firmly convinced" that the trial court made a mistake. *People v Armstrong*, 305 Mich App 230, 237; 851 NW2d 856 (2014).

Plain-error analysis is employed for unpreserved scoring arguments. See *People v Thompson*, 314 Mich App 703, 709 n 4; 887 NW2d 650 (2016), and *People v Kimble*, 470 Mich 305, 311-312; 684 NW2d 669 (2004). To obtain relief under the plain-error doctrine, the appellant must demonstrate that a clear or obvious error occurred that affected the outcome of the lower court proceedings. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

First addressing the OV for which defendant preserved an error, defendant received 15 points for OV 10. OV 10, dealing with "exploitation of a vulnerable victim," warrants a score of 15 points if "[p]redatory conduct was involved[.]" MCL 777.40(1)(a). At the time of defendant's offense and sentencing,[3] MCL 777.40 stated, in part:

> (3) As used in this section:
>
> (a) "Predatory conduct" means preoffense conduct directed at a victim for the primary purpose of victimization.
>
> (b) "Exploit" means to manipulate a victim for selfish or unethical purposes.
>
> (c) "Vulnerability" means the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation.

To assess points for OV 10, a vulnerable victim and exploitation must be evident. *People v Cannon*, 481 Mich 152, 158-159; 749 NW2d 257 (2008). In addition, "[P]reoffense conduct directed at a victim for the primary purpose of victimization inherently involves some level of exploitation." *Id*. at 159. "Points may be assessed under OV 10 for exploitation of a vulnerable victim when the defendant has engaged in conduct that is considered predatory under the statute." *Id*. The *Cannon* Court stated, "the statute mandates that preoffense conduct not be considered predatory if its main purpose is other than making the potential victim an actual victim." *Id*. at 161.

---

[3] Although MCL 777.40 has since been amended, the amendments do not at all pertain to this case. See 2014 PA 350 and 2018 PA 652.

"When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a PSIR [presentence-investigation report]." *People v Thompson*, 314 Mich App 703, 708-709; 887 NW2d 650 (2016). Defendant's PSIR states the following:

> On 7-2-01 [a detective] interviewed the victim . . . . [The victim] advised that on 6-11-01 he spent the night at the defendant's home . . . . The victim advised that during the night the defendant kept putting his hand in his pants and playing with his penis. The victim then advised on another night he went to the defendant's home and had dinner. The defendant asked the victim if he wanted to take a bath and the victim declined. Ultimately, the victim did end up taking a bath and the defendant kept walking in on him. When the victim got out of the shower and was putting his pants on, the defendant picked him up and put him on a bed and began sucking the victim's penis with his mouth.

Defendant contends that an age difference between an offender and a victim does not automatically mean that victim vulnerability is present. Age was not the only factor considered. It was not clearly erroneous for the trial court to conclude that the victim, an 11-year-old child visiting the home of 35-year-old adult man *who had earlier fondled him*, had a "readily apparent susceptibility . . . to injury, physical restraint, persuasion, or temptation." MCL 777.40(3)(c); see also, generally, *Cannon*, 481 Mich at 162.

In addition, a reasonable inference from all the circumstances is that defendant's purpose for asking the victim to take a bath was victimization. See *id.*; see also *People v Earl*, 297 Mich App 104,109; 822 NW2d 271 (2012) ("The trial court may rely on reasonable inferences arising from the record evidence to sustain the scoring of an offense variable."). Defendant contends that such a conclusion is pure speculation, but the evidence that defendant fondled the victim in the past, kept walking in on the victim during the bath, and then committed the offense before the victim finished dressing takes the situation out of the realm of pure speculation and into the realm of a reasonable inference. No clear error occurred with regard to the scoring of OV 10.

Defendant received 10 points for OV 4. For this OV, which deals with "psychological injury to victim," a score of 10 points is warranted if "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a).[4] MCL 777.34(2) states, "[s]core 10 points if the serious psychological injury may require professional treatment. In making this determination, the fact that treatment has not been sought is not conclusive."

The PSIR states:

> On 9-10-01 this writer spoke with [the victim's mother]. [The mother] agrees with this writer's recommendation and wants no future contact with this defendant. [The mother] indicated that the victim in this matter has had one previous counseling session and [she] is presently in the process of getting him

---

[4] MCL 777.34 was amended in 2018, but the amendment does not implicate the present case in any fashion. See 2018 PA 652.

involved in ongoing counseling, adding that the victim is very scared of this defendant.

Defendant contends that *People v White*, 501 Mich 160; 905 NW2d 228 (2017), conclusively establishes that OV 4 was improperly scored in the present case. *White*, however, is distinguishable. In *White*, *id.* at 163, the trial court approved a 10-point score for OV 4, stating that because the victim had been afraid, had been held at gunpoint, and had heard what she thought was a trigger being pulled, it was a reasonable inference that the victim suffered psychological injury. This Court concluded that (1) a court cannot assume the existence of psychological injury merely based on the circumstances of the crime and (2) a mere expression of fearfulness is insufficient to support a 10-point score for OV 4. *Id.* at 163-165.

However, the *White* Court also stated the following:

> Of course, a victim's fear while a crime is being committed may be highly relevant to determining whether he or she suffered a "serious psychological injury [that] may require professional treatment" and thus may be considered together with other facts in determining how to score OV 4. We merely hold that, *absent other evidence of psychological harm*, fear felt during the crime is insufficient to assess points for this variable. [*Id.* at 165 n 3.]

In the present case, evidence showed that the victim expressed fear of defendant but *also* that the victim (1) had undergone counseling and (2) was going to be participating in ongoing counseling. This matter is thus unlike *White*, *supra*, and *People v Hicks*, 259 Mich App 518, 535; 675 NW2d 599 (2003) (wherein the record did not "reflect any evidence of serious psychological harm to the victim or give any indication that [the victim] needed psychological treatment"). The assessment of 10 points for OV 4 was appropriate.

Defendant received 10 points for OV 9. OV 9 deals with the "number of victims." MCL 777.39. At the time of defendant's offense and sentencing, MCL 777.39 indicated that 10 points were warranted if there were two to nine victims placed in danger of injury or loss of life.[5] In *People v Sargent*, 481 Mich 346, 350; 750 NW2d 161 (2008), the Supreme Court stated, "when scoring OV 9, only people placed in danger of injury or loss of life when the sentencing offense was committed (or, at the most, during the same criminal transaction) should be considered." In *People v Waclawski*, 286 Mich App 634, 684; 780 NW2d 321 (2009), the Court upheld the assessment of 10 points for OV 9 by concluding that it was a reasonable inference from the testimony "that . . . other boys were sleeping [at the defendant's home] while defendant was assaulting his chosen victim."[6] In *Waclawski*, *id.*, the Court relied on testimony that multiple boys often spent the night at the defendant's home together. Here, defendant stated at sentencing

---

[5] After the enactment of 2006 PA 548, MCL 777.39(1)(c) now states that 10 points are warranted if "[t]here were 2 to 9 victims who were placed in danger of physical injury or death[.]"

[6] The Court stated, "the record supports the inference that at least two other victims were placed in danger of physical injury when the sentencing offenses were committed." *Id.*

-4-

that "[t]hese kids was [sic] living at my house." Given *Waclawski* and given defendant's admission at sentencing, we cannot find that a "clear or obvious" error occurred with regard to the 10-point score. See *Kimble*, 470 Mich at 312 (quotation marks and citation omitted). If children were staying at defendant's home with great frequency, then others were placed in danger at the time he committed the sentencing offense.

Defendant received 50 points for OV 13. OV 13 deals with a "continuing pattern of criminal behavior." MCL 777.43(1). MCL 777.43(1)(a) provides for a score of 50 points if "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more sexual penetrations against a person or persons less than 13 years of age[.]"[7] "[A]ll crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a). Except in circumstances not relevant here, conduct scored for OV 11 or 12 is not to be scored for OV 13,[8] MCL 777.43(2)(c), and a 50-point score is appropriate only if the sentencing offense is CSC-I, MCL 777.43(2)(d).

Defendant contends that there has been no showing of the requisite pattern of felonious activity because there was sufficient evidence of only one offense involving penetration—i.e., the sentencing offense—and the felony information setting forth additional penetrations cannot be used as evidence because it involves mere allegations.

The PSIR refers to "defendant's conduct in the presence [sic] offense which involved him having at least eleven separate incidents of sexual contact involving at least three victims that were under the age of thirteen." The report further states, "[i]n reviewing the Roscommon Co. Sheriff Dept. report, it is understood that between 5-1-01 and 6-30-01 the defendant had sexual contact that involved oral/penile penetration of three young boys under the age of thirteen." Moreover, in *People v Nix*, 301 Mich App 195, 205; 836 NW2d 224 (2013), the Court, in discussing OV 13, stated that "[a] sentencing court is free to consider charges that were earlier dismissed, if there is a preponderance of the evidence supporting that the offense took place." (Citation omitted.). The Court added that "[i]t follows that a court may consider the charges against a defendant dismissed as a result of a plea agreement in scoring OV 13." *Id*.

As noted, the contents of a PSIR can be used to support the scoring of offense variables, *People v Johnson*, 298 Mich App 128, 130; 826 NW2d 170 (2012). The reference to "sexual contact that involved oral/penile penetration of three young boys under the age of thirteen" occurring "between 5-1-01 and 6-30-01," along with defendant's statements that "[t]hese kids was [sic] living at my house" and "[t]heir parents . . . pretty much knew what was going on," adequately supported the scoring of OV 13 such that no plain error has been demonstrated. *Kimble*, 470 Mich at 312.

---

[7] MCL 777.43 was amended after defendant's offense and sentencing, but the amendments do not implicate the present case in any fashion. See 2002 PA 666 and 2008 PA 562.

[8] Defendant was not assessed points for OV 11 or 12.

Defendant also argues that his judgment of sentence must be reissued in order to "reset the clock" for post-conviction proceedings or, alternatively, that he must be given a renewed opportunity to pursue his motion to withdraw his plea. His argument is based on his belief that he was wrongfully denied the appointment of an appellate attorney shortly after his 2001 conviction and sentencing. Defendant raised this issue in the trial court but then, for unknown reasons, withdrew it from consideration by the court. Nevertheless, both defendant and the prosecution appear to agree that the issue can be resolved on the existing record, and therefore, despite questions of ripeness, we choose to address the issue in the interest of judicial economy. See MCR 7.216(A)(7) ("The Court of Appeals may, at any time, in addition to its general powers, in its discretion, and on the terms it deems just . . . enter any judgment or order or grant further or different relief as the case may require.")

Defendant relies heavily on *Halbert v Michigan*, 545 US 605; 125 S Ct 2582; 162 L Ed 2d 552 (2005), arguing that it supports his claimed relief. In *Halbert*, 545 US at 610, the United States Supreme Court concluded that appellate counsel must be provided for defendants convicted by way of plea "who seek access to first-tier review in the Michigan Court of Appeals." But, in *People v Maxson*, 482 Mich 385, 402-403; 759 NW2d 817 (2008), the Michigan Supreme Court concluded that *Halbert*, which was decided in 2005, did not apply retroactively to cases in which a defendant's conviction has become final. Defendant's conviction was finalized after this Court denied his first delayed application for leave to appeal in 2003. *People v Bemis*, unpublished order of the Court of Appeals, entered August 1, 2003 (Docket No. 248333). Defendant does cite a case, *People v Johnson*, 485 Mich 915; 773 NW2d 263 (2009), in which the Michigan Supreme Court relied on *Halbert* to provide relief in an otherwise finalized case, but *Johnson* differs in a key way from the present case. In *Johnson*, the Court ruled that the defendant was entitled to essentially "restart" the period for post-conviction proceedings (as defendant wishes to do in the present case) because the defendant should have been provided an attorney, *based on Halbert and the then-existing court rules*, for his *2006* plea-based conviction. *Id*. The *Johnson* Court said, "[a]t the time of the defendant's plea and sentence, he was entitled to" court-appointed appellate counsel. *Id*. The present case is different because the law was different at the time of defendant's pre-*Halbert* plea and sentence. Using *Johnson* as guidance, the pertinent question is whether defendant was entitled to court-appointed appellate counsel *under the law existing at the time of his conviction and sentencing in 2001.*[9]

In 2001, MCR 6.425(E)(2) stated, in part:

> In a case involving a conviction following a plea of guilty or nolo contendere, immediately after imposing sentence, the court must advise the defendant, on the record, that
>
> (a) the defendant is entitled to file an application for leave to appeal;

---

[9] MCR 6.425 was amended in 2005 *because of Halbert*. See Staff Comment to the July 2005 and December 2005 Amendments.

(b) if the defendant is financially unable to retain a lawyer, the court must appoint a lawyer to represent the defendant on appeal if

(*i*) the defendant's sentence exceeds the upper limit of the minimum sentence range of the applicable sentencing guidelines,

(*ii*) the defendant seeks leave to appeal a conditional plea under MCR 6.301(C)(2),

(*iii*) the prosecuting attorney seeks leave to appeal, or

(*iv*) the Court of Appeals or the Supreme Court grants the defendant's application for leave to appeal. [461 Mich cci-ccii.]

None of these conditions applied in defendant's situation.

MCR 6.425(2) also stated that the court was required to advise the defendant of the following:

(c) if the defendant is financially unable to retain a lawyer, the court, in its discretion, may appoint a lawyer to represent the defendant on appeal if all the following apply:

(*i*) the defendant seeks leave to appeal on the basis of an alleged improper scoring of an offense variable or a prior record variable,

(*ii*) the defendant objected to the scoring or otherwise preserved the matter for appeal, and

(*iii*) the sentence constitutes an upward departure from the upper limit of the minimum sentence range that the defendant alleged should have been scored;[10] and

(d) the request for a lawyer must be made within 42 days after sentencing, unless the entitlement to counsel arises under (b)(iii) or (iv). [461 Mich ccii.]

The trial court stated at sentencing that it was giving defendant and his attorney documents that explained defendant's appeal rights. The record contains a form setting forth the substance of the above court rules, and it is signed by defendant.

On September 25, 2001, defendant indicated that he wanted an appointed attorney; he did not, however, fill out any information relating to his finances and also did not "check" any of the boxes designating the various conditions that could qualify him for an appointed attorney in

---

[10] Even if the sole OV argument raised at defendant's sentencing had been accepted, it would not have changed the guidelines range.

accordance with MCR 6.425(2). On October 12, 2001, defendant filed another document requesting appointment of an attorney; this time, he did fill out the financial form, averring that he had zero income and zero assets. However, this particular form did not contain the checkboxes corresponding to MCR 6.425(2), and defendant provided no additional information regarding how he qualified for a court-appointed attorney under that rule. The register of actions, in an entry dated October 15, 2001, states, "JTS SENT LTR TO DEFT ASKING FOR ISSUES TO RAISE ON APPEAL." There is no indication in the record that defendant ever responded to this request for clarification, which was crucial in determining whether defendant was entitled to a court-appointed attorney.

While it would have been better for the trial court to have issued an order clearly explaining that defendant's request for appellate counsel had been denied and delineating the reasons for the denial, the fact remains that from the existing record defendant has not shown any error with regard to the fact that counsel was not appointed in 2001. As such, his argument on appeal that the date of his judgment of sentence should be "reset" because of the deprivation of counsel is simply unavailing.

We note, however, that the trial court did in 2018 appoint counsel for defendant. The prosecutor has not cross-appealed to contest this ruling by the court, and therefore it remains intact. *In re Estate of Herbach*, 230 Mich App 276, 284; 583 NW2d 541 (1998) (stating that a cross-appeal is necessary to "obtain a decision more favorable than that rendered by the lower tribunal").

The scoring of the contested OVs is affirmed, and the further relief requested by defendant is denied.

/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto
/s/ Amy Ronayne Krause